IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF KANSAS


BARBARA GARRISON,                )
                                 )
              Plaintiff,         )
                                 )   CIVIL ACTION
v.                               )
                                 )   No. 12-1063-JWL
CAROLYN W. COLVIN,[1]            )
Acting Commissioner of Social Security, )
                                 )
              Defendant.         )
_____)


                          **MEMORANDUM AND ORDER**

     Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I.    Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD on January 28, 2009, alleging disability beginning January 1, 2006. (R. 13, 177-78).[2] The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 13, 68-69, 91-92). Plaintiff's request was granted, and Plaintiff appeared with a representative (who is also an attorney) for a hearing before ALJ George M. Bock on May 11, 2011. (R. 13, 25-26). At the hearing, testimony was taken from a medical expert (hereinafter ME), from Plaintiff, and from a vocational expert. (R. 13, 25-67).

On July 11, 2011 ALJ Bock issued his decision regarding the period from January 1, 2006 through Plaintiff's date last insured, March 31, 2009 (R. 13-24), finding that Plaintiff had severe impairments including fibromyalgia, chronic obstructive pulmonary disease (COPD), depression, anxiety, history of substance abuse, and history of right cubital nerve impingement. (R. 15). He also found that Plaintiff's alleged hand impairments were not medically determinable impairments in the circumstances of this case. (R. 16). He determined that during the relevant period Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment in the Listing of Impairments--20 C.F.R. Part 404, Subpt. P, App. 1. Id.

---

[2]The record shows that Plaintiff, through her representative, amended her alleged onset date to July 1, 2007, in a statement dated April 13, 2010. (R. 179). The decision, on the other hand, states that Plaintiff's alleged onset date is January 1, 2006, and neither party addressed this ambiguity in her brief. Because the court affirms the ALJ's determination that Plaintiff was not disabled at any time from January 1, 2006 through Plaintiff's date last insured, March 31, 2009, it need not address the issue of Plaintiff's alleged onset date.

He summarized the record evidence, Plaintiff's allegations, and the medical opinions; accorded weight to the medical opinions; evaluated the credibility of Plaintiff's allegations of symptoms; and assessed Plaintiff's residual functional capacity (RFC). (R. 17-22).

The ALJ determined that Plaintiff had the capacity to perform a range of light work limited to only occasionally climbing stairs, bending, crouching, and crawling; that she could never climb ladders, ropes, and scaffolds, or interact with the public while performing job duties; and that she must avoid concentrated exposure to cold, wetness, humidity, and airborne irritants. (R. 17). Based upon the RFC assessed, the ALJ determined that Plaintiff was unable to perform any of her past relevant work, but that when also considering her age, education, and work experience there were a significant number of jobs in the economy that Plaintiff could have performed such as an electrical assembler, a price marker, and a folding machine operator. (R. 23-24). Therefore, the ALJ determined that Plaintiff was not disabled within the meaning of the Act during the relevant period, and denied her application for benefits. (R. 24).

Plaintiff sought, but was denied, Appeals Council review of the ALJ's decision. (R. 1-5, 175). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

**II. Legal Standard**

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520 (2011);[3] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity

---

[3]Because the Commissioner's decision in this case was issued on July 11, 2011, all citations to the Code of Federal Regulations in this opinion refer to the 2011 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2011, unless otherwise indicated.

of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses the claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's RFC. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff presents four issues asserting error, all of which touch upon the ALJ's RFC assessment. She claims that the ALJ did not perform a proper credibility analysis; that the ALJ erroneously relied upon the opinion of the non-examining ME, Dr. Winkler, over that of her treating physician, Dr. Katz; that the ALJ erroneously accorded "very little weight" to Dr. Katz's opinion; and that the ALJ's narrative discussion of his RFC assessment inadequately explains how the record evidence supports the limitations assessed. The Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's allegation of symptoms, properly considered the medical opinions, and

6

provided a proper narrative discussion of his RFC assessment. As did the Commissioner (and the plaintiff in her Reply Brief), the court will address the ALJ's consideration of the medical opinions as a single unit. Moreover, because the narrative discussion requirement applies to RFC assessment as a whole, the court will address that issue last.

## III. Medical Opinions

Plaintiff argues that the ALJ erred by according greater weight to the medical opinion of a non-examining ME, Dr. Winkler, than to that of her treating physician, Dr. Katz. She argues that "[t]he ALJ failed to provide the required 'specific, legitimate reasons' for rejecting" Dr. Katz's opinion (Pl. Br. 19), failed to evaluate Dr. Katz's opinion in accordance with the regulatory factors, and failed to explain how the record evidence supports the relative weight accorded to these two medical opinions. Id. at 20-21. Specifically, she argues that the ALJ failed to explain how the ME's opinion was supported by the record evidence more than the opinion of the treating physician. Id. at 17-18. The Commissioner argues that the ALJ properly discounted Dr. Katz's opinion because it was inconsistent with the other record evidence (Comm'r Br. 10) and because the doctor's course of treatment was not consistent with the limitations expressed in his opinion. Id. at 13. The Commissioner points to record evidence, including Dr. Winkler's testimony, which in her view supports the reasons given for discounting Dr. Katz's opinion. (Comm'r Br. 10-14).

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported

7

by clinical and laboratory diagnostic techniques and if it is not inconsistent with the other record evidence. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2). When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Watkins, 350 F.3d at 1300. When the Commissioner does not give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment(s), the Commissioner will evaluate all medical opinions in accordance with those regulatory factors. 20 C.F.R. § 404.1527(d)(2-6). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins, 350 F.3d at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is]

'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinions. If the ALJ rejects a treating source opinion, he must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

As noted above, the ALJ in his decision summarized the record evidence, Plaintiff's allegations, and the medical opinions; accorded weight to the medical opinions; evaluated the credibility of Plaintiff's allegations of symptoms; and assessed Plaintiff's RFC. (R. 17-22). The ALJ summarized Dr. Winkler's testimony that Plaintiff could perform a range of light work limited by an inability to climb ladders, ropes, and scaffolds, and with the ability to only occasionally climb stairs, bend, crouch, or crawl. (R. 20). He noted Dr. Winkler's opinion that Plaintiff must avoid unprotected heights, or concentrated exposure to cold, wetness, humidity, or airborne irritants. Id. He stated that he gave Dr. Winkler's opinion "great weight," and he adopted her limitations as his RFC assessment. Id. The ALJ also summarized Dr. Katz's testimony, noting that Dr. Katz opined that Plaintiff was unable to sit, to stand, or to walk during an eight-hour workday. Id. He noted that this opinion contrasts "sharply with the other evidence of record," and that the opinion is inconsistent with the course of treatment provided by Dr. Katz. Id. For these reasons, he accorded Dr. Katz's opinion "very little weight." Id.

9

Plaintiff asserts the reasons given by the ALJ to discount Dr. Katz's opinion are insufficient because Dr. Katz treated Plaintiff fifteen times over the course of two years, because the ALJ failed to cite specific evidence which was contrary to Dr. Katz's opinion, because the ALJ did not apply the regulatory factors, and because the opinion of a treating source should be given greater weight than the opinion of a non-examining source. The court does not agree.

The court notes that Dr. Winkler testified that she found Dr. Katz's opinion that Plaintiff could not sit five or ten minutes and could not use her hands "remarkably not supported in the record," and stated that even someone with severe rheumatoid arthritis would not be expected to be so limited. (R. 35-36). The ALJ found that Dr. Katz's opinion contrasted sharply with the other record evidence. (R. 20). The court agrees with both of these characterizations. Dr. Katz's opinion reveals an individual who is unable to do even the most basic of activities. (R. 511-12) (cannot sit, stand, or walk; cannot perform simple grasping with either hand; and cannot push or pull). However, the record evidence does not reflect limitations approaching such severity. Moreover, the court's review of Dr. Katz's treatment notes does not reflect such limitations.

Further, the record supports the ALJ's finding that Dr. Katz's course of treatment of Plaintiff was not consistent with such severe limitations. Dr. Katz treated Plaintiff once a month for six months during the relevant period before her date last insured. (R. 434-43) (Oct. 28 2008, Nov. 25 2008, Dec. 24 2008, Jan. 21 2009, Feb. 18 2009, and Mar. 13 2009). As the ALJ's summary suggests, Dr. Katz's treatment notes from that

period reveal an intake evaluation, repeated recommendations that Plaintiff exercise three times a week and that she engage in swimming three times a week and stretch every day, all to decrease her fibromyalgia pain. They reveal management of Plaintiff's fibromyalgia pain with medication. At her second office visit, Plaintiff was begun on a course of Mirapex for her pain. (R. 438). At the third office visit, the Mirapex was increased. (R. 437). At the fourth office visit, January 21, 2009, Plaintiff stated that her "pain levels have improved significantly since being on Mirapex," and the doctor also recommended exercising at a particular exercise facility--the Lemons Center. (R. 436). At the fifth office visit, February 18, 2009, Plaintiff stated "that she is doing very well with the Mirapex," and she was told by Dr. Katz "that she must exercise at least three times a week." (R. 435). At her final visit during the relevant period on March 13, 2009, Plaintiff reported that her pain had increased, and "that the Mirapex helps, but it just needs to be at a higher dose." (R. 434). Dr. Katz increased the dosage and included this note in his records, "She was told again that she must exercise. She was told that going to the Lemons Center would be an excellent idea for physical activity as well as some psychological help. She does understand this, and she will be looking into this." (R. 434). This is the picture of a relatively conservative course of treatment for a patient whose pain is being managed with medication, and who is being encouraged to do more, not less. This does not present the picture of someone who is severely limited in all her activities.

Plaintiff objects to the ALJ's characterization of this treatment record, noting that she consistently reported being in pain even when she stated that the medication was helping. Plaintiff's argument misses the point. The ALJ did not find that Plaintiff does not experience pain. Rather, the ALJ correctly noted that "the inability to work without some pain or discomfort is not necessarily disabling under the Act." (R. 20). And, as the Commissioner's brief suggests, "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Gossett, 862 F.2d at 807 (quoting Brown v. Bowen, 801 F.2d 361, 362-63 (10th Cir. 1986)).

Plaintiff's argument that the ALJ did not appropriately address the regulatory factors for weighing medical opinions fares no better. As the court noted above, it will not insist on a factor-by-factor analysis in evaluating medical opinions so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham, 509 F.3d at 1258 (quoting Watkins, 350 F.3d at 1300). That standard is met here. The ALJ acknowledged that Dr. Katz is a treating physician, and he summarized Dr. Katz's treatment during the time period relevant here. He explained his reasons for according "very little weight" to Dr. Katz's opinion and, as discussed above, those reasons are supported by substantial record evidence. Plaintiff's argument that the ALJ failed to cite specific evidence which was contrary to Dr. Katz's opinion ignores the ALJ's summary of the evidence, and erroneously expects that each time an ALJ states a

finding he will once again state and cite the evidence supporting that finding even if the evidence has been previously discussed in the decision.

Plaintiff is correct that the opinion of a treating source is generally accorded greater weight than is the opinion of a non-examining source who has only reviewed the record evidence--such as Dr. Winkler. However, in a case such as this where the ALJ properly determined that the treating source opinion was worthy of "very little weight," the court finds that the ALJ properly explained why Dr. Winkler's opinion outweighed the opinion of Dr. Katz. The ALJ found that Dr. Winkler's opinion was both well supported by and not inconsistent with the other substantial record evidence, and the court finds that to be true. Although Plaintiff argues that the ALJ did not explain why the evidence supports Dr. Winkler's opinion, she does not point to any evidence other than Dr. Katz's opinion which is contrary to Dr. Winkler's opinion. The court will not make Plaintiff's case for her. Moreover, Plaintiff once again ignores the rest of the decision in which the ALJ summarized the record evidence, and she ignores the fact that the evidence supports Dr. Winkler's opinion. The court finds no error in the weight the ALJ accorded to Dr. Katz's opinion or to Dr. Winkler's opinion.

## IV. The Credibility Determination

Plaintiff claims error in the credibility determination because the ALJ erred in weighing Plaintiff's activities of daily living, and did not properly evaluate Plaintiff's level of pain. She argues that the ALJ did not affirmatively link substantial evidence to the credibility finding. The Commissioner argues that the ALJ applied the correct legal

13

standard to evaluate the credibility of Plaintiff's allegations of symptoms resulting from her impairments, that the ALJ considered appropriate factors in his evaluation, and that the record evidence supports the ALJ's findings.

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 404.1529(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489. The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The decision reveals that the ALJ applied the appropriate framework, determined that Plaintiff's impairments could cause the symptoms alleged and that there is a nexus between Plaintiff's impairments and the symptoms alleged, and consequently considered all of the evidence in order to evaluate the credibility of her allegations. (R. 18, 20). The ALJ found that Plaintiff's allegations of symptoms are not credible (R. 18), and specifically found "that her symptoms are not of such severity, persistence and intensity as to preclude all work activity." (R. 20).

The specific reasons given by the ALJ for his credibility finding were: (1) that her subjective complaints "are inconsistent with the medical record as discussed throughout this decision" (R. 18); (2) Plaintiff did not consistently follow Dr. Ruhlman's or Dr. Katz's suggested exercise regimen (R. 19); (3) Plaintiff's "symptoms were largely controlled by medications, id.;" (4) Plaintiff was more active in her activities of daily living than would be expected if her allegations were credible (R. 20); (5) Plaintiff was arrested for altering a Lortab prescription (R. 21); and (6) Plaintiff's inability to perform her past relevant work is not probative regarding her ability to work at lower exertional levels. (R. 22).

With regard to Plaintiff's daily activities, Plaintiff argues that the ALJ's evaluation was not based on all of the record evidence, and that an ALJ may not ignore evidence favorable to Plaintiff when making a credibility analysis. (Pl. Br. 22) (citing Owens v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995)). However, the only evidence which Plaintiff alleges was ignored by the ALJ were portions of her statements and of her

testimony. While it is true that the Commissioner may not ignore evidence favorable to a finding of disability, it is intuitively obvious to even the most casual observer that an ALJ need not accept Plaintiff's statements or testimony at face value when considering the credibility of those very allegations. The very idea is preposterous, for rather than ignoring Plaintiff's statements and testimony in such a situation, the ALJ has specifically recognized them and is considering what weight they should be accorded. (R. 18) (recognizing Plaintiff's reports of difficulty walking, difficulty bending, difficulty with concentration, constant fatigue, feelings of sadness, etc.). To the extent Plaintiff may be arguing that it was error for the ALJ to fail to state each and every limitation Plaintiff reported, that is not the law. An ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). The purpose of the credibility determination is to consider whether Plaintiff's allegations of symptoms are uncontroverted or significantly probative.

Plaintiff argues that her daily activities constitute the sporadic performance of household tasks and, as such, do not establish that she is able to engage in substantial gainful activity. (Pl. Br. 22) (citing Thompson, 987 F.2d at 1489). While it is true that the sporadic performance of household tasks does not establish that Plaintiff can engage in work, "such activities may be considered along with other evidence, in determining whether a person is entitled to disability benefits." Gossett, 862 F.2d at 807.

17

Plaintiff's argument that the ALJ failed properly to evaluate her level of pain seeks merely to have the court reweigh the ALJ's credibility finding and substitute its judgment for that of the ALJ. It is without authority to engage in such an undertaking. Bowman, 511 F.3d at 1272 (The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."); accord, Hackett, 395 F.3d at, 1172. Moreover, the court's discussion above explains that the inability to work without some pain or discomfort is not in itself disabling under the Act. Supra, at 12. Plaintiff has shown no error in the ALJ's credibility determination.

V.     **Narrative Discussion**

Plaintiff claims the ALJ's narrative discussion was insufficient to explain how the evidence supported his RFC limitations. Here is the heart of Plaintiff's argument:

> The ALJ's narrative discussion was scant as it consisted of citing four separate office visits regarding Garrison's treatment for her fibromyalgia to support his conclusion that Garrison's pain due to her fibromyalgia was largely controlled by medications. As shown, the limited evidence specifically cited by the ALJ, when evaluated in its entirety, did not support the ALJ's conclusion that Garrison's pain was controlled by her medications. "The ALJ may not pick and choose partial entries in a medical record to support his ruling, he must consider the record as a whole." Although the ALJ relied on the opinion of the medical expert in determining the RFC, the medical expert simply testified Garrison did suffer from fibromyalgia and did not provide further explanation or analysis concerning the medical records. The ALJ failed to provide the proper narrative discussion as required by SSR 96-8p when evaluating the medical evidence and determining Garrison was capable of light exertional work.

(Pl. Br. 15-16) (quoting Schwarz v. Barnhart, 70 F. App'x. 512, 518 (10th Cir. 2003)) (citations omitted).

As Plaintiff's Brief suggests, Social Security Ruling (SSR) 96-8p includes narrative discussion requirements for RFC assessment. West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2012). The discussion must cite medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id. The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. It must also include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities. Id. at 149-50. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion. Id. at 150.

The error in Plaintiff's argument has already been demonstrated in this decision. As the Commissioner points out, the ALJ's narrative discussion appears at pages 17-23 of the record. (Comm'r Br. 15) (pages 5 - 11 of the decision). As discussed herein, the ALJ considered and explained how Plaintiff is able to perform sustained work activities and the limitations in the work activities Plaintiff can perform, he also considered and discussed the credibility of Plaintiff's allegation of symptoms, and the weight accorded each medical opinion of record. As the court found above, Plaintiff has shown no error in the ALJ's evaluation of the medical opinions or in the ALJ's evaluation of the credibility of Plaintiff's allegation of symptoms. Moreover, Plaintiff points to no evidence which the ALJ actually ignored. In short, Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 8th day of April 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum
United States District Judge**